AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Jersey

| | |
|---|---|
| United States of America<br>v.<br>DANTE WITCHER<br><br>*Defendant(s)* | Case No.<br>15-mj-5516 (KMW) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  Sept 9, 2014 through Nov 10, 2014  in the county of  Camden  in the District of  New Jersey , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 922(a)(1)(A), 922(g)(1), and 922(j) | Knowingly and willfully engaging in the business of dealing firearms, while not being a federally-licensed dealer, importer, or manufacturer of firearms; having been convicted of a crime punishable by imprisonment for a term exceeding one year in a court of the State of New Jersey, knowingly possessing in and affecting commerce a firearm; knowingly selling in and affecting commerce a firearm, knowing or having reasonable cause to believe it was stolen. |

This criminal complaint is based on these facts:
See Attachment A.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

SarahJane Serafino,
*Printed name and title*

Sworn to before me and signed in my presence.

Date: January 27, 2015

City and state:  Camden, New Jersey

_____
*Judge's signature*

Karen M. Williams, United States Magistrate Judge
*Printed name and title*

CONTENTS APPROVED

UNITED STATES ATTORNEY

BY: _____
Sara Aliabadi
Assistant United States Attorney

Date: __2/27/15__

## ATTACHMENT A

### COUNT ONE

From on or about September 9, 2014 through on or about November 10, 2014, in Camden County, in the District of New Jersey, and elsewhere, defendant

**DANTE WITCHER**

did knowingly and willfully engage in the business of dealing firearms, while not being a federally-licensed dealer, importer, or manufacturer of firearms.

In violation of Title 18, United States Code, Section 922(a)(1)(A).

### COUNT TWO

On or about November 9, 2014, in Camden County, in the District of New Jersey, and elsewhere, defendant,

**DANTE WITCHER,**

having been convicted of a crime punishable by imprisonment for a term exceeding one year in a court of the State of New Jersey, did knowingly possess in and affecting commerce a firearm, namely a Springfield Armory, model XD-9 9mm pistol, serial number MG743674.

In violation of Title 18, United States Code, Section 922 (g)(1).

1

## COUNT THREE

On or about November 9, 2014, in Camden County, in the District of New Jersey, and elsewhere, defendant,

## DANTE WITCHER,

did knowingly sell in and affecting commerce a firearm, namely a Springfield Armory, model XD-9 9mm pistol, serial number MG743674, knowing or having reasonable cause to believe that the firearm was stolen.

In violation of Title 18, United States Code, Section 922(j).

## ATTACHMENT B

SarahJane Serafino, Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn according to law, deposes and states the following:

## AFFIANT'S BACKGROUND

1. I have been employed as an ATF Special Agent since April 2007 and am currently assigned to the ATF's Philadelphia Field Division's Firearms Trafficking Unit. The Firearms Trafficking Unit is comprised of other ATF Special Agents and Philadelphia Police Department detectives whose primary responsibilities include investigating individuals or groups who have committed violations of federal firearms and narcotics trafficking laws. During my work as an ATF agent, I have conducted numerous investigations that have resulted in the arrests of individuals who have committed these violations of federal law. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy, and have specialized training and experience in various types of investigative activities, including, but not limited to, the following: (a) physical surveillance; (b) the debriefing of defendants, witnesses, informants and other individuals who have knowledge concerning violations of federal firearms laws; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; and (f) the handling and maintenance of evidence.

2. I have personally participated in the investigation discussed below and am aware of the facts contained herein based upon my own investigation as well as information provided to me by other law enforcement officers, sources of information, and/or confidential informants. Since this

1

Affidavit is submitted for the sole purpose of establishing probable cause to support the issuance of a Criminal Complaint charging Dante WITCHER, I have not included each and every fact known to me concerning this investigation. Where statements of others are set forth in this Affidavit, they are set forth in substance and in part. Similarly, dates and times are approximations, and should be read as on about, in about, or at about the date or time provided.

## STATEMENT OF PROBABLE CAUSE FOR CRIMINAL COMPLAINT

3. On or about September 3, 2014, an ATF confidential informant (hereafter referred to as the "CI") contacted me and stated that an individual known to the CI as "Dant," later identified as defendant Dante WITCHER, resides in Camden, New Jersey and is a "middle man" or broker for a group of individuals who travel out of the area to conduct burglaries of Federal Firearms Licensees ("FFLs"). The CI indicated that after the firearms have been obtained, the group contacts WITCHER to find potential buyers for the stolen firearms. The CI further stated that WITCHER told the CI that he already sold five 9mm caliber pistols and one "Desert Eagle" handgun obtained during a recent burglary, and that from the same burglary, he still had three .45 caliber and one .40 caliber handguns, which he would sell for $700 each, earning him a $100 profit per firearm.

4. The CI described "Dant" as a black male in his early 40's, approximately 5'9" and weighing approximately 200 pounds. The CI further stated that "Dant" works in a hospital. I showed the CI a photograph of Dante WITCHER, devoid of identifiers, and the CI identified the individual in the photograph as "Dante," the individual from Camden who was selling stolen firearms.

2

5. An inquiry of the National Criminal Information Center criminal history database for Dante WITCHER revealed that WITCHER has been arrested five times and has three felony convictions. Certified copies of the judgments of conviction for Dante WITCHER from New Jersey Superior Court, Camden County indicate that he was convicted of possession with intent to distribute a controlled dangerous substance, a third-degree crime, and was sentenced to three years' probation on February 7, 1992; convicted of manufacturing/distributing/dispensing a controlled dangerous substance, a second-degree crime, and sentenced to five years' imprisonment on April 12, 1996; and convicted of resisting arrest, a fourth-degree crime, and was sentenced to nine months' imprisonment on November 18, 1996.

6. Subsequently, over the course of three controlled purchases, WITCHER sold the CI fifteen firearms, all of which were confirmed stolen by FFLs located in North Carolina. As the investigation established and as set forth in greater detail below, WITCHER willfully engaged in dealing of the firearms himself without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A); knowingly possessed firearms while being a previously convicted felon, in violation of Title 18, United States Code, Section 922(g)(1); and knowingly sold firearms which he knew to be stolen, in violation of Title 18, United States Code, Section 922(j).

7. Pursuant to ATF standard procedure, prior to and following each of the controlled purchases, investigators searched the CI's vehicle and person for firearms and contraband. In every case, the pre/post searches revealed neither firearms nor contraband in the CI's

vehicle or on the CI's person. It should also be noted that the controlled purchases were arranged by the CI under the direction of Agents through a series of cellular telephone calls and text messages between the CI and WITCHER.

8. The CI has provided information to ATF in the past regarding the illegal sale of firearms in the Eastern District of Pennsylvania, such as addresses, license plates and knowledge of criminal actions of individuals involved in the illegal sale of firearms. This information has been confirmed and independently corroborated through consensual recordings and surveillance operations.. The CI's active cooperation with law enforcement has proven reliable, and information provided by the CI with respect to this investigation has also been proven reliable and corroborated. The CI has four prior felony convictions, as well as a pending unlawful possession of a firearm by a prohibited person charge, and a pending intentional possession of a controlled substance by a person not regulated charge. Both pending charges are being prosecuted by the Commonwealth of Pennsylvania. The CI has pled guilty to both pending charges, is cooperating in the hope of obtaining consideration in connection with this open state firearm charge, and has also received monetary payment for his cooperation.

## The September 9, 2014 Controlled Purchase:  1 Firearm

9. On September 3, 2014 the CI and WITCHER spoke in a recorded phone conversation. Using the code "45th Street," "40 Old English" and "40 ounce" to refer to .45 and .40 caliber handguns, and "size six" and "seven and half" to refer to prices of $600 and $750 for the firearms, WITCHER suggested that the CI travel to Philadelphia to conduct the sale. On

4

September 8, 2014 WITCHER texted the CI that he had a .45 caliber firearm for sale for $700, again using code, and arranged to meet the CI at a restaurant parking lot (the "Philadelphia Restaurant") in South Philadelphia the next day.

10. On September 9, 2014, after confirming with WITCHER via text the meeting location and time, the CI and an undercover task force officer (the "UC") drove in the CI's vehicle to the parking lot of the Philadelphia Restaurant. The CI then received a phone call from WITCHER, who asked the CI where in the parking lot the CI was located. The CI then relocated the CI's vehicle to another area of the parking lot, parked it near a Nissan Maxima (the "Nissan") driven by WITCHER and entered its passenger side door. The CI told WITCHER that the CI had left the $700 with the UC in the CI's vehicle, exited the Nissan and retrieved the money, re-entered the Nissan, and gave the $700 in pre-recorded ATF funds to WITCHER. WITCHER indicated that the firearm was in a red cooler in the back seat of the Nissan. The CI retrieved the cooler, confirmed that it contained the firearm, a Springfield Armory, model 1911 .45 caliber pistol, serial number NM377233, and exited the Nissan with the cooler. The CI then placed the cooler inside the rear of the CI's vehicle and departed the meeting location. Shortly thereafter, WITCHER exited the Nissan wearing hospital scrubs and walked towards a nearby PNC bank. The Nissan is registered to an individual with the last name of Witcher at 2908 North Congress Road, Camden, New Jersey, which is the same address at which WITCHER lives.[1] A few days following the controlled purchase, WITCHER told the CI in a recorded phone call that the robberies occur

---

[1] WITCHER's residence has been confirmed by law enforcement officers through a driver's license record check and surveillance, among other investigative techniques.

5

approximately once a month, and that he did not expect another batch of firearms to be available for sale until then. Over the next several weeks, the CI and WITCHER subsequently spoke about the availability of firearms for sale.

### The November 9, 2014 Controlled Purchase: 5 Firearms

11. On November 9, 2014, WITCHER told the CI that he would have multiple firearms for sale later that day. Over the course of multiple conversations, again using code such as "44th Street" and "9th Street" to denote .44 and 9mm caliber firearms and "5th Street" and "650 is the address" to denote prices of $500 and $650, respectively, WITCHER agreed to meet the CI at a location in Camden and sell the CI five firearms for $3,000. Later that evening, the CI and UC drove in the CI's vehicle to the meeting location, 2908 North Congress Road in Camden, and parked a few cars away from WITCHER's vehicle. WITCHER arrived at the meeting location, entered the CI's vehicle and stated that the guns were located nearby. The UC told WITCHER to go get the firearms and that the UC was not paying for them until the UC saw them. WITCHER then exited the CI's vehicle and walked down the block, entered the Nissan and pulled away. Approximately fifteen minutes later, WITCHER called the CI to advise that he had the firearms, and then texted the CI that he was en route to the meeting location. Approximately fifteen minutes after that call, investigators observed the Nissan, followed by a white Cadillac (the "Cadillac"), return to the area of the meeting location. WITCHER parked the Nissan near the CI's vehicle, and the Cadillac parked several car lengths ahead of the Nissan. WITCHER exited the Nissan and retrieved a weighted bag from its trunk and walked over to the CI's vehicle.

6

The driver of the Cadillac followed WITCHER in the direction of the CI's vehicle. WITCHER told the CI to relocate the CI's vehicle closer to 2908 North Congress Road. WITCHER retrieved from the CI's vehicle the same red cooler used during the September 9, 2014 controlled purchase, and carried the cooler and the weighted bag across the street toward 2908 North Congress Road, followed by the driver of the Cadillac. WITCHER then called the CI regarding payment for the firearm, and returned shortly to the CI's vehicle and entered the rear, saying he thought the money was in the cooler. The UC handed WITCHER $3,000 in pre-recorded ATF funds, which WITCHER counted before exiting the CI vehicle and walking back in the direction of 2908 North Congress Road. WITCHER then returned to the CI's vehicle with the cooler, entered the rear of the CI's vehicle and placed the cooler inside, while the Cadillac's driver walked past the CI's vehicle. WITCHER stated that the guns were inside the cooler. WITCHER and the CI then agreed to talk in the morning about further firearm purchases. The cooler contained five firearms: a Springfield Armory, model XD-9 9mm pistol, serial number MG743674; a Springfield Armory, model XD-9 9mm pistol, serial number XD902336; a Springfield Armory, model XD-9 9mm pistol, serial number XD902344; a Ruger, model Super Blackhawk .44 caliber revolver, serial number 87-27277; and a Ruger, model Redhawk .44 caliber revolver, serial number 503-24895. A query of all five firearms revealed that they were reported stolen from two FFLs in North Carolina. These firearms currently are being tested for operability.

### The November 10, 2014 Controlled Purchase: 9 Firearms

12. On or about November 10, 2014, WITCHER contacted the CI to determine whether the CI was still interested in purchasing more firearms, and if so, how many. WITCHER agreed to sell

7

the CI five 9mm firearms for $3,000 and to meet the CI at a restaurant located in Pennsauken (the "Pennsauken Restaurant"). The CI and UC arrived at the Pennsauken Restaurant and parked in the parking lot. WITCHER then arrived in the Nissan and parked nearby the CI's vehicle. The CI and WITCHER, who was wearing hospital scrubs, spoke as they stood in the parking lot, and WITCHER stated that he was concerned about security in the lot, so WITCHER, the CI and the UC then entered the Pennsauken Restaurant and sat at the bar. When the UC asked WITCHER about "long guns," WITCHER replied that all the CI needed to do was put in an order, and WITCHER would let his source know. The UC then handed WITCHER $3,000 in pre-recorded ATF funds, and WITCHER left to count the money in the bathroom. WITCHER, the CI and the UC then exited the Pennsauken Restaurant. WITCHER told the CI and UC that he did not want to complete the sale in the restaurant parking lot because there was too much traffic, and suggested that they complete the sale across the street. WITCHER and the UC then entered the Nissan, and the CI entered the CI's vehicle and both vehicles departed. The CI followed WITCHER and the UC to the parking lot of a nearby business and both parked. WITCHER and the UC exited the Nissan, stood between the two vehicles and WITCHER opened the Nissan's trunk. WITCHER retrieved a bag containing the firearms from the Nissan's trunk and placed it in the rear of the CI's vehicle. The UC asked WITCHER if his source had any more guns for sale and stated that the UC had $2,000 to pay for four more. WITCHER then called his source, confirmed that his source did have additional guns.

13. The UC then transferred the five firearms, a Walther, model P99 9mm pistol, serial number FAT2505; a Taurus, model PT 24/7 G2C 9mm pistol, serial number TFT60136; a Taurus, model PT 24/7 G2 9mm pistol, serial number TGS04709; a Taurus, model PT 809C 9mm pistol, serial

number TGR72981; and a Stoegar Cougar, model 8000 FT 9mm pistol, serial number T6426-12G02456, from the bag to the same red cooler that had been used in the two previous controlled purchases on September 9 and November 9, 2014. The UC gave the bag to WITCHER for WITCHER to use to transport the four additional firearms. WITCHER then departed the parking lot in the Nissan to pick up the additional firearms from his source. The CI and UC then re-entered the CI's vehicle and drove back to the Pennsauken Restaurant to wait for WITCHER to return with the additional firearms. WITCHER subsequently texted the CI that the best price WITCHER could get for the four additional guns was $2,200, to which the UC agreed. WITCHER subsequently returned to the restaurant's parking lot, parked next to the CI's vehicle, and entered the CI's vehicle carrying the bag. WITCHER opened the bag to show the UC the guns inside. The UC then handed WITCHER $2,100 in pre-recorded ATF funds. WITCHER said that the shortfall was alright. WITCHER then exited the CI's vehicle, re-entered the Nissan and departed.

14. Inside the bag were four additional firearms: a Kel-Tec, model P11 9mm pistol, serial number AA1T65; a Beretta, model PX4 Storm .40 caliber pistol, serial number PY105423; a Kel-Tec, model P11 9mm pistol, serial number AA1W17; and a Bersa, model Thunder 9 Ultra Compact Pro 9mm pistol, serial number D65942. A query of all nine firearms revealed that they were all stolen from FFLs in North Carolina. Later testing of these firearms revealed that they are all operable.

15. During the course of the investigation, a query of the ATF National Licensing Center revealed that WITCHER has never applied for, nor received, a federal firearms license.

9

16. An ATF interstate nexus expert researched the Springfield Armory USA, model XD-9 9mm pistol, serial number MG743674 purchased from WITCHER on November 9, 2014 and the Kel-Tec CNC Inc., model P-11 9mm pistol, serial number AA1T65 purchased from WITCHER on November 10, 2014. Both the Springfield Armory USA and Kel-Tec CNC Inc. firearms were manufactured outside the State of New Jersey, the former in Croatia and the latter in Florida. Therefore, for the firearms to be present in New Jersey they must have traveled in interstate commerce.

## CONCLUSION

17. Based upon the facts and evidence set forth in this Affidavit, there is probable cause to believe that defendant Dante WITCHER violated Title 18, United States Code, Section 922(a)(1)(A) in that he willfully engaged in the business of dealing firearms without a license; knowingly possessed firearms while being a previously convicted felon, in violation of Title 18, United States Code, Section 922(g)(1); and knowingly sold firearms which he knew to be stolen, in violation of Title 18, United States Code, Section 922(j).